IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARWA CHIROPRACTIC, P.C., an Illinois professional corporation, individually and as the representative of a class of similarly situated persons, )<br><br>Plaintiff, )<br><br>v. )<br><br>MED-CARE DIABETIC & MEDICAL SUPPLIES, INC. and STEVEN SILVERMAN, )<br><br>Defendants. ) | 14 C 5602<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

From July to October 2013, Plaintiff Arwa Chiropractic, P.C. (Plaintiff) received a series of six faxes from Med-Care Diabetic & Medical Supplies, Inc. (Med-Care). Based upon its receipt of these faxes, Plaintiff has filed suit against Med-Care and its CEO, Steven Silverman (together, Defendants), alleging violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. In addition, Plaintiff has alleged state law claims for conversion and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*.

Plaintiff has filed a motion for class certification pursuant to Federal Rule of Civil Procedure (Rule) 23(b)(3), seeking certification solely with respect to its TCPA claims. For the reasons provided herein, Plaintiff's motion is granted.

# I. Background

Med-Care is a for-profit company that sells medication and medical equipment to consumers. Pl.'s Mot. Class Certification (Pl.'s Mot.) at 2, ECF No. 93. Before Med-Care can complete a sale of medication or medical equipment to a consumer, a licensed medical provider must prescribe the medication or equipment. *Id.* at 3. Thus, to process a sale to a consumer, Med-Care typically instructs one of its employees to call the consumer and request that the consumer provide his or her medical provider's information, so that Med-Care can then contact the medical provider to solicit a prescription. *Id.* at 3–4. According to Med-Care, it explains to all patients requesting a prescription that a prescription request form will be sent "on [the patient's] behalf to [his or her] doctor." Defs.' Resp. at 6, ECF No. 97.

If the consumer is unable to provide full contact information for his or her medical provider, Med-Care's employees can fill in missing details about the provider using the National Provider Index database. Pl.'s Mot. at 4. Med-Care does not contact medical providers directly to confirm the existence of a doctor-patient relationship or to obtain the provider's contact information. *Id.*

From July through October 2013, Med-Care sent six "broadcasts" of faxes to thousands of medical providers. *Id.* at 7–8. These broadcasts were sent on July 2, July 10, October 2, October 9, October 17, and October 25, 2013. *Id.* at 8. In total, over 46,000 faxes were sent during these six broadcasts, and Arwa received a fax from Med-Care in each one. *Id.* at 7–8.

Each of the faxes sent during these six broadcasts concerned an "Ipratropium-Albuterol Nebulizer Kit." *Id.* The faxes stated: "Your patient has asked us to contact you regarding authorization for a Nebulizer and its medications to help with their breathing problems. . . . In order to supply those products to your patient, under the Medicare program, we must obtain a signed order by the patient's physician." *Id.*; *see also* Pl.'s Ex. I, Six Faxes at 2–8. All of the faxes sent in these broadcasts were identical except for the date and the patient- and doctor-specific identifying information listed on each fax. *Id.* at 8. None of the faxes contained an opt-out notice. *Id.* at 7.

Plaintiff contends that the faxes it received during these six broadcasts were sent in violation of the TCPA. In addition, Plaintiff has moved for class certification of its TCPA claim pursuant to Rule 23(b)(3), seeking to certify a class defined as follows:

> All persons who were sent one or more facsimiles from Med-Care Diabetic & Medical Supplies of Boca Raton, FL on any of the following 6 dates: July 2, 2013, July 10, 2013, October 2, 2013, October 9, 2013, October 17, 2013, or October 25, 2013, stating, "Your patient has asked us to contact you regarding authorization for a Nebulizer and its medications to help with their breathing problems. . . . In order to supply those products to your patient, under the Medicare program, we must obtain a signed order by the patient's physician.

Pl.'s Mot. at 9.

With the proposed class definition in mind, the Court now turns to the merits of Plaintiff's motion for class certification.

## II. Legal Standard

Class certification is governed by Rule 23. Under Rule 23(a), class certification is permitted only when: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012).

In addition, when, as here, class certification is sought pursuant to Rule 23(b)(3), "proponents of the class must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner*, 669 F.3d at 811 (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)). Class certification is "normal" under the TCPA, "because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013).

It is important to note that "Rule 23 does not set forth a mere pleading standard." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (internal quotation marks omitted) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Rather, "[p]laintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements." *Messner*, 669 F.3d at 811. As such, when

reviewing a motion for class certification, a court "may not simply assume the truth of the matters as asserted by the plaintiff[s]," but instead must receive evidence and resolve factual disputes as necessary to decide whether certification is appropriate. *Id.* (citing *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal–Mart*, 564 U.S. at 350–51 (internal quotation marks omitted).

Although "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits," *Messner*, 559 F.3d at 811, considerations bearing on class certification often overlap with issues underlying the merits of the plaintiffs' claims. *See Wal–Mart*, 564 U.S. at 351; *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 599 (7th Cir. 1993). A court must accordingly "make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo*, 249 F.3d at 676).

### III. Analysis

Plaintiff has moved for class certification of its TCPA claims pursuant to Rule 23(b)(3), arguing that its proposed class meets the requirements of numerosity, commonality, typicality, and adequacy under Rule 23(a), as well as the requirements of predominance and superiority under Rule 23(b)(3). In response, Defendants contest all the requirements except numerosity. Mindful that

"certification is proper only if the trial court is satisfied . . . that the prerequisites of Rule 23(a) have been satisfied," *Wal–Mart*, 564 U.S. at 351–52 (internal quotation marks omitted), the Court now turns to discuss all four requirements for class certification under Rule 23(a), as well as the requirements of predominance and superiority under Rule 23(b)(3). As explained below, the Court finds that Plaintiff satisfies all of these requirements, and the Court therefore grants Plaintiff's motion for class certification.

## A. Rule 23(a)(1): Numerosity

Rule 23(a) requires that members of a certified class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied where "it's reasonable to believe [the class is] large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagner Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). Generally speaking, classes of forty or more members have been found to be sufficiently numerous to warrant class certification. *See, e.g., Pruitt v. City of Chi.*, 472 F.3d 925, 926–27 (7th Cir. 2007); *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008).

Plaintiff asserts that it has established numerosity under Rule 23(a) because invoices from Med-Care's fax vendor with fax transmission quantities show that Defendants sent over 46,000 faxes to thousands of recipients. Pl.'s Mot. at 10; Pl.'s Ex. M, Westfax Invoices at 2–7. The Court notes that the invoices specify the quantity of fax transmissions, but they do not appear to indicate the number of

recipients *per se*.  *Id*., Ex. M.  It may be possible, for example, that Defendants sent thousands of fax transmissions to a small number of recipients.  Be that as it may, Defendants, as the senders of the faxes, are in a position to know the number of recipients, and they do not dispute Plaintiff's assertion.  The Court therefore finds that Plaintiff has satisfied the numerosity requirement.

## B. Rule 23(a)(2): Commonality

For class certification to be proper, the class members' claims must present common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  A question is common to the class if it generates a common answer, such that determination of the question will "resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal–Mart*, 564 U.S. at 350.  The common questions "need not address every aspect of the plaintiffs' claims," but they "must 'drive the resolution of the litigation.'"  *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 553 (7th Cir. 2016) (quoting *Wal–Mart*, 564 U.S. at 350).  "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do."  *Wal–Mart*, 564 U.S. at 359. In TCPA cases, commonality "normal[ly]" exists because the question of whether a particular fax is an advertisement is generally common to the putative class.  *Holtzman*, 728 F.3d at 683.

Here, Plaintiff asserts that a number of common questions drive the resolution of its claims, including: (1) whether Defendants' "prescription request form" is an "advertisement" within the meaning of 47 U.S.C. § 227(a)(5); (2) whether Defendants obtained "express invitation or permission" from recipient doctors

before sending the faxes to them; (3) whether the forms included compliant opt-out language; (4) whether Defendants have sender liability for the faxes; (5) whether Plaintiffs and other class members are entitled to statutory damages; (6) whether Defendants' violations were knowing or willful and, if so, whether the Court should treble the statutory damages; and (7) whether the Court should enjoin Defendants from faxing advertisements in the future without prior express consent or without an opt-in notice. Pl.'s Mot. at 11.

While Plaintiff has proposed a number common questions, Pl.'s Mot. at 11–12, it is sufficient for our purposes to note that whether the faxes at issue would qualify as "advertisements" under the TCPA is a central question common to all recipients. *See Holtzman,* 728 F.3d at 683; *see also Wal–Mart*, 564 U.S. at 359 ("Even a single [common] question will do."). Moreover, Defendants intend to move for summary judgment on this basis, Defs.' Resp. at 2, further underscoring how this common question will "drive the resolution of litigation." *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 553 (7th Cir. 2016) (quoting *Wal–Mart*, 564 U.S. at 350).

To the extent that Defendants discuss commonality at all, they do so only in the context of their objections to Rule 23's typicality and predominance requirements.[1]  But, for the reasons explained *infra*, these arguments are

---

[1]     Defendants assert that "plaintiff's lack of typicality undermines . . . any possible commonality amongst the putative class." Defs.' Resp. at 3.  However, Defendants then go on to argue that Rule 23(a)(3)'s typicality requirement is not satisfied, without explaining why typicality would, in this case, also affect the commonality analysis. *Id*. at 6–11. Defendants then refer to commonality once more, stating, "[s]imply put, plaintiff is unable to satisfy Rule 23's commonality and predominance requirements." *Id*. at 11. However, Defendants then proceed to make arguments with regard to Rule 23(b)(3)'s predominance and superiority requirements, without again referring to commonality. *Id*. at 11–12.

unavailing. Accordingly, the Court finds that Plaintiff has satisfied Rule 23(a)'s commonality requirement.

## C. Rule 23(a)(3): Typicality

Typicality under Rule 23(a) requires that the named plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and "are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The typicality requirement is thus satisfied when "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n*, 7 F.3d at 597. "Typicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724–25 (7th Cir. 2011) (quoting *id.*).

Plaintiff states that it meets the typicality requirement because Defendants faxed each class member one or more "prescription request forms" regarding an Ipratropium-Albuterol Nebulizer Kit. Pl.'s Mot. at 12. According to Plaintiff, each of the class members was subjected to the same conduct, and each member's claim is based on the same legal theory as Plaintiff's. *Id.*

In response, Defendants argue that Plaintiff's claims are not typical of the class it proposes to represent because, unlike other putative class members who received prescription request forms that contained names of their patients, Plaintiff

received a form with the name of a person who was not its patient. Defs.' Resp. at 7, 12. Defendants opine that Rule 23(a) typicality is destroyed because Defendants have a consent defense against other members of the putative class that Defendants cannot assert against Arwa Chiropractic, P.C., the named plaintiff. *Id*. at 8, 14. Defendants rely on the Seventh Circuit case *CE Design*, 637 F.3d at 724–25.[2] *See* Defs.' Resp. at 7. However, as Defendants concede in passing, *id*., the *CE Design* court addressed particularized defense arguments not within the context of Rule 23(a)'s typicality requirement (which focuses on Defendants' conduct), but rather its adequacy requirement, which focuses on Plaintiff and the putative class. 637 F.3d at 724–25; *see, e.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 225 (N.D. Ill. 2016) (quoting *id*.). Therefore, the Court will address Defendants' consent-defense argument within the context of Rule 23(a)'s adequacy requirement.

Because the Court does not otherwise find any reason to doubt that Plaintiff's claims have the same essential characteristics as the claims of members of the class, the Court concludes that the typicality requirement is satisfied.

### D. Rule 23(a)(4): Adequacy

The adequacy requirement under Rule 23(a)(4) comprises two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class

---

[2]    In *CE Design*, Plaintiff, but not other putative class members, had published its number in the *Blue Book of Building and Construction*. 637 F.3d at 725–26. Plaintiff had agreed that "by supplying The Blue Book with your fax and e-mail address, you agree to have The Blue Book *and users of The Blue Book services* communicate with you *via fax* or e-mail." *Id*. (emphasis in original). The court remanded to the district court to determine if this "arguable" consent defense, *inter alia*, defeated Rule 23(a)(4)'s adequacy requirement. *Id*. at 728.

members." *Retired Chi. Police Ass'n*, 7 F.3d at 598. "[A] class is not . . . adequately represented if class members have antagonistic or conflicting claims." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Plaintiff asserts that it satisfies both components of the adequacy requirement. With respect to the qualifications of counsel, Plaintiff notes that counsel Bock, Hatch, Lewis & Oppenheim, LLC has "proven expertise in TCPA litigation." Pl.'s Mot. at 13; *see* Pl.'s Ex. N, BHLO Resume at 3–17. Counsel has "been litigating TCPA claims since 2003 and ha[s] prosecuted dozens of such cases to successful resolution, including many class-wide settlements." Pl.'s Mot. at 13. With respect to the second prong of the adequacy requirement, Plaintiff explains that it and the other class members all seek statutory damages under the TCPA, they have no antagonism toward one another, there is no potential for conflicting interests, and Plaintiff understands the obligations and nature of its claims. *Id.*

In response, Defendants do not dispute that the first prong of adequacy is met, and the Court notes counsel's extensive experience with over twenty TCPA cases. *See* Pl.'s Mot., Ex. N at 3–17. The Court therefore finds no indication that Plaintiff's counsel will be inadequate to protect the interests of the class.

In response to the second prong of adequacy, Defendants replicate their argument against typicality. Namely, Defendants argue that they have an affirmative defense against an unspecified percentage of putative class members, which Defendants concede they do not have against the sole named Plaintiff. Defs.' Resp. at 12–14, 6–11. Defendants do not explain why exactly this difference would

make Plaintiff inadequate. However, the Court construes Defendants' argument to suggest that the sole named Plaintiff would be inadequate because it would not have an incentive to adequately litigate against a defense to which most other class members would be subjected. *Id.*

In support of their argument, Defendants rely on the Seventh Circuit's statement in the TCPA case *CE Design* that the "presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class" may make the named plaintiff an inadequate representative of the class. 637 F.3d at 726 (quoting *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980)). Defendants argue that Plaintiff is peculiar in that Defendants lack a consent defense against Plaintiff that they arguably hold against most or all of the rest of the proposed class.[3] Defs.' Resp. at 8.

In its reply, rather than addressing whether Defendants' consent defense is unique to Plaintiff, Plaintiff argues that Defendants' asserted consent defense is entirely without merit.[4] Pl.'s Rep. at 5–7. Given parties' apparent agreement that

---

[3]     In *CE Design*, 637 F.3d at 726, defendants held a defense uniquely against the named plaintiff, while here Defendants concededly *lack* a defense against the named Plaintiff that they assert they hold against much of the rest of the class. This difference is of little import, however, because, if the defense were meritorious, a named plaintiff might have significantly differing litigation incentives as compared to fellow members, regardless of whether it is the object or non-object of the defense.

[4]     The Court assumes, without deciding, that Defendants' asserted consent defense against Plaintiff would, if viable, be "peculiar" to Plaintiff or a subset of putative plaintiffs. *Id.* However, neither party has presented evidence as to what percentage of fax recipients were properly matched to their actual patients. Given Med-Care's information-sourcing practices, including, *inter alia*, asking end consumers for information about their doctors and looking up information in the NPI database, Pl.'s Mot. at 3–4; Defs.' Resp. 6–7, it may be the case that a significant percentage of fax recipients were incorrectly matched to consumers who were not

12

Defendants' consent defense against Plaintiff would, if valid, be peculiar to the named Plaintiff, the critical inquiry under *CE Design* is whether the defense is "arguable." 637 F.2d at 726. If the consent defense has some merit, that would suggest a potentially serious adequacy problem with the named plaintiff. *Id.* If the defense appears to have no or little merit based on the record at the class certification stage, it cannot be the basis for inadequacy because the defense would only minimally, if at all, distract Plaintiff from representing the interests of the broader class. *See id.* at 728 (Defendants cannot "derail legitimate class actions by conjuring up . . . insubstantial defenses unique to the class representative"). The Court therefore finds it is necessary to make legal and factual inquiries to ensure the adequacy requirement of class certification is satisfied, even though this consideration overlaps somewhat with the merits of the case. *See Wal–Mart*, 564 U.S. at 351; *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 599 (7th Cir. 1993); *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo*, 249 F.3d at 676).

Defendants' consent defense is grounded in the TCPA, 47 U.S.C. § 227(b)(1)(C), which provides that it is unlawful for any person to use a fax machine to send to another fax machine an "unsolicited advertisement." The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any

---

their patients. For its part, Med-Care asserts, without citation to any supporting evidence, that the mistaken doctor-patient matching "applies only to Arwa Chiropractic and not the proposed class." Defs.' Resp. at 9.

person without *that person's prior express invitation or permission, in writing or otherwise.*" *Id.*, § 227(a)(5) (emphasis added).

Defendants do not argue that any doctors to whom they sent "prescription request forms" by fax provided express invitation or permission directly to Med-Care. Rather, consent allegedly came in three decidedly indirect forms.[5]  First, "consent to send the prescription request form to the medical provider . . . came from the patient who requested the Med-Care product." Defs.' Resp. at 8.  Second, doctor-recipients expressly consented to receiving the fax  because "[t]he faxes were sent to the physician at a number the physician would have supplied to their patient, and the patient then gave to Med-Care" and "the doctor would have permitted her patient to use that fax number." *Id.*  Third, some doctors allegedly consented to receiving further forms by previously sending back signed forms, the original receipt of which they had consented to by the previous two means of consent. *Id.* at 14.

All of Defendants' express consent arguments lack viability based on the current record. As to the first argument, Plaintiff correctly notes, Pl.'s Rep. at 5, that the plain language of § 227(a)(5) unambiguously states that express invitation or permission ("consent")  may be given only by the recipient of the advertising.[6]

---

[5]     Defendants also present a fourth consent-defense argument, namely that "if a doctor had published the fax number [anywhere], there will be an unsettled dispute" requiring "individualized review" for each doctor-recipient as to whether the doctor gave express consent. Defs.' Resp. at 10.  This argument is most appropriately analyzed within the context of Rule 23(b)(3)'s predominance requirement, and the Court addresses the argument there.

[6]     Plaintiff also claims, and Defendants concede, that all the relevant faxes failed to contain an "opt-out" notice. Pl.'s Rep. at 5; Defs.' Resp. at 5.  However, Plaintiff's arguments regarding

Therefore, any argument that relies wholly on a non-recipient granting consent cannot satisfy the statute.[7]

As to Defendants' second argument, even if the legal argument were correct, Defendants make factual claims that are unsupported by the evidence before the Court. *Cf. CE* Design, 637 F.3d 721 at 728 (requiring that the party "assault[ing]" adequacy must "demonstrate that there exists admissible evidence"). With no support, Defendants claim that an unspecified proportion of recipient doctors "would have" supplied fax numbers to their patients and again, without support or specification of frequency, that the patient then gave the numbers to Med-Care,

---

opt-out notices are irrelevant to class certification, and the briefing of both parties appears to demonstrate some confusion regarding the role of opt-out notices.

Despite parties' apparent belief to the contrary, under 47 U.S.C. § 227, a lack of an opt-out notice is not an element of a TCPA violation. Rather, § 227(b)(C) provides that where Defendants have an "established business relationship" with recipients, § 227(b)(C)(i), the TCPA is not violated where, *inter alia*, the advertisement contains a sufficient opt-out notice, § 227(b)(C)(iii). Thus, where a recipient has no "established business relationship" with a defendant and yet receives an unsolicited advertisement, the TCPA is violated regardless of whether the advertisement contains an opt-out notice.

An "established business relationship" is defined in 47 CFR § 64.1200(f)(5) as a "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber . . . on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity . . . ." Here, Defendants do not argue at this stage that they have an established business relationship with any recipients of their faxes. The opt-out notice issue is therefore irrelevant to class certification.

[7]     Defendants' reliance on the Eleventh Circuit case *Osorio v. State Farm Bank*, 746 F.3d 1242 (11th Cir. 2014), is misplaced. In that case, the court held that a jury should be allowed to determine if cohabitants who, crucially, shared a single phone line, could expressly consent to calls intended for the other on the same phone line. *Id*. at 1253–54. *Osorio* therefore does not endorse a broad theory of third-party express consent, but rather addresses the situation in which more than one person exercises dominion over one phone number.

rather than Med-Care sourcing the fax numbers from the NPI database. Defs.' Resp. at 8. Defendants then assert, without support, that the recipient doctors "would have" consented to the sending of the fax because the doctor "would have" permitted her patient to use that fax number. *Id*. It is unclear whether Defendants, by using the phrasing "would have," mean to indicate that these parties actually did what Defendants claim, or rather that they "would have" if hypothetically requested to do so. In any event, Defendants fail to support either interpretation with evidence.

Moreover, even accepting each of Defendants' unsupported factual assertions as true, Defendants do not explain how this course of conduct constitutes express consent on the part of the doctor-recipients to receive unsolicited advertisements by fax from Med-Care. Even if doctors "permitted [their] patient[s] to use that fax number," Defs.' Resp. at 8, that plainly is express permission for only the *patient* to send a fax to the doctor rather than permission for Med-Care, or any other person, to do so.[8] At best, Defendants confuse implied consent for the express consent required under the TCPA.

As to Defendants' third theory of consent, Defendants' claims are, again, entirely unsupported by evidence. Defendants assert that "the request forms that are faxed to medical providers include . . . prescription requests . . . related to refills," citing to a page of an exhibit that contains no such support for that claim. Defs.' Resp. at 14; Pl.'s Ex. B, Goetz Dep at 156. Without citation to any evidence,

---

[8] Express permission to use a fax number is also not in itself express permission to send an advertisement to that fax number. The TCPA requires the latter in order for the advertisement to not be unsolicited. *See* 47 U.S.C. § 227(a)(5).

Defendants then claim that when a fax "is related to a refill, the medical provider has already returned the completed prescription request form received by facsimile, evidencing further consent to receive the prescription requests by fax." *Id.* Defendants also fail to specify whether such alleged refill-request forms were part of the six "broadcasts" at issue in Plaintiff's proposed class, or if those forms contained the same language required to be included in the proposed class. *Id.* Defendants' argument thus again evokes the Seventh Circuit's declination to let defendants "derail legitimate class actions by conjuring up . . . insubstantial defenses unique to the class representative." *CE Design*, 637 F.3d at 728; *see Savanna Group, Inc. v. Trynex, Inc.*, 2013 WL 66181, at *9 (N.D. Ill. Jan. 4, 2013) (finding commonality and adequacy requirements met where there was no evidence to support consent defense); *Hawkins v. Securitas Sec. Serv. USA, Inc.*, 280 F.R.D. 388, 394 (N.D. Ill. 2011) (rejecting objection to adequacy based upon meritless defense); *Manno v. Healthcare Revenue Recovery Group, LLC,* 289 F.R.D. 674, 687–88 (S.D. Fla. 2013) (certifying class where asserted defense shared by putative class members—but not named plaintiff—was not viable); *Meyer v. Portfolio Recovery Assoc,, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (certifying class where there was no evidence that named plaintiff or putative class members had consented to receiving communication); *Silbaugh v. Viking Magazine Serv.,* 278 F.R.D. 389, 392–93 (N.D. Ohio 2012) (certifying class where there was no evidence that putative class members had expressly consented to receiving communication); *cf. Johnson v. Yahoo!, Inc.*, 2016 WL 25711, at *4–5 (N.D. Ill. Jan. 4, 2016) (finding adequacy requirement not met

where there was sufficient indication that plaintiff expressly consented to receiving communication).

In sum, Defendants' arguments that they had the express invitation or permission of recipient doctors that § 227(a)(5) requires lack viability based on the record before the Court. Accordingly, the Court concludes that Plaintiff would likely not need to devote significant resources to litigate the consent defense on behalf of the class, and Plaintiff would not have a misalignment in incentives to protect the interests of the class as a whole.

Therefore, given the nature of Plaintiff's claims, there is no indication that the named representative will be inadequate to protect the interests of the class, or that there is risk of antagonistic or conflicting claims arising within the class.[9] The Court concludes that Plaintiff has satisfied the adequacy requirement under Rule 23(a).

### E. Rule 23(b)(3): Predominance

Rule 23(b)(3) builds upon Rule 23(a)'s requirement of commonality by further requiring that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Common questions are said to predominate over other issues in the case when "a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Messner*, 669 F.3d at 815 (internal quotation marks omitted). In other words, class certification

---

[9] To the extent that further developments in the factual record would require the Court to reevaluate this determination, it has the discretion to do so. *See* Fed. R. Civ. P. 23(c)(1)(C); *Fonder v. Sheriff of Kankakee County*, 823 F.3d 1144, 1147 (7th Cir. 2016).

under Rule 23(b)(3) is proper when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Id.*

Plaintiff argues that predominance is satisfied because the class members' claims arise under the same federal statute (the TCPA), the Defendants sent all class members the same form of advertisement in six fax blasts during a four-month period in 2013, and none of the putative class members provided prior express invitation or permission. Pl.'s Mot. at 13–14.

In response, Defendants argue that, for every putative class member, an individual inquiry is required as to whether the fax recipient gave prior express consent, "with no means of resolving that disputed issue on a class wide basis." Defs.' Resp. at 11–12.

In support of this argument, Defendants assert that the Seventh Circuit's holding in *CE Design* effectively prohibits TCPA class actions where a Defendant places consent in issue.[10] According to Defendants, the consent issue "must be treated and resolved on a case-by-case basis as instructed by the Seventh Circuit,

---

[10] Defendants also rely on misguided interpretations of Eleventh and Fifth Circuit cases in support of their individualized-inquiry argument. Defendants assert that *Osorio*, 746 F.3d at 1252–54, requires a federal court to look to the common law of each class member's state to determine the meaning of consent for that particular plaintiff. Defs.' Resp. at 10. It does not. That court merely looked to state law, among other sources, including Black's Law Dictionary, to help inform its statutory interpretation of "consent" in the TCPA. *Osorio*, 746 F.3d at 1252–54. In addition, Defendants' comparison to *Gene and Gene LLC v. Biopay LLC*, 541 F.3d 318, 329 (5th Cir. 2008), is also misplaced. The court there held that the plaintiff had "failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class" and, therefore, individualized inquiries were unavoidable. *Id.* By contrast, here, Plaintiff has demonstrated that such individualized inquiries into consent would not be necessary given, among other reasons, the utter lack of evidence to support the defense.

rendering class treatment impossible." Defs.' Resp. at 9. Defendants rely on the Seventh Circuit's statement in *CE Design* that "it [is] appropriate to treat the issue of consent in any complaint regarding unsolicited facsimile advertisements on a case-by-case basis." *Id*.; *CE Design*, 637 F.3d at 726–27. Defendants misread *CE Design* by equating "case-by-case basis" with "plaintiff-by-plaintiff basis."[11] The Seventh Circuit's admonition, *id*., was to make a fact-specific inquiry in each TCPA fax case as to whether recipients granted consent.[12] Here, the Court has evaluated Defendants' express consent arguments within the context of the class certification record, and it has found the arguments lack viability.

In this case, Plaintiff has met its burden of demonstrating that common questions predominate over individualized issues as to the rest of the class. Each of the class members' claims arises under the TCPA, Defendants sent all class

---

[11] Defendants' individualized-inquiry argument also contradicts their consent-defense argument against typicality. For the purposes of assailing typicality, Defendants argue that they have a consent defense against most of the putative class (but not named Plaintiff) because, by providing their doctors' information to Med-Care, those consumers categorically provided consent to Med-Care to send their doctors forms by fax. But for purposes of assailing predominance, Defendants assert that consent can only be determined on a plaintiff-by-plaintiff basis. The arguments contradict one another, and they are both incorrect.

[12] Moreover, despite Defendants' claim to the contrary, *CE Design*, 637 F.3d 721, does not stand for the proposition that "if a doctor had published the fax number" anywhere, Defs.' Resp. at 10, "there will be an unsettled dispute about whether that publication equals consent." *Id*. Nor does it imply that if "doctors . . . had released their fax numbers generally to the public, [the doctors] likely would have consented to receive the prescription request forms . . . ." *Id*. at 14. Instead, it was critical in *CE Design* that Plaintiff had published its number in the *Blue Book of Building and Construction,* where Plaintiff had agreed that "by supplying The Blue Book with your fax and e-mail address, you agree to have The Blue Book *and users of The Blue Book services* communicate with you *via fax* or e-mail." *CE Design*, 637 F.3d at 725–26 (emphasis in original). And, according to the court, in this particular instance, providing consent to send faxes also provided express consent to send advertising via fax because "why else would those sellers [including Defendant] want to "communicate" with civil engineers [Plaintiffs] by fax except to advertise their wares to them?" *Id*. at 725.

members the same form by fax, and there appear to be no viable individualized defenses based on the record at this stage. *See Zeidel v. A&M (2015) LLC*, 2017 WL 1178150, at \*5 (N.D. Ill. Mar. 30, 2017) (finding predominance requirement met in TCPA case where there were no viable individualized consent defenses); *Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 253–53 (N.D. Ill. 2014) (same); *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 313–14 (S.D. Fla. 2017) (same); *Avio v. Alfoccino, Inc.,* 311 F.R.D. 434, 445–46 (E.D. Mich. 2015) (same); *Manno*, 289 F.R.D. 674, 689–90 (S.D. Fla. 2013) (same); *Kristensen v. Credit Payment Serv.*, 12 F.Supp.3d 1292, 1306–07 (D. Nev. 2014) (finding lack of evidence of express consent in TCPA case means that "courts should ignore a defendant's argument that proving consent necessitates individualized inquiries" (citing *Meyer,* 707 F.3d at 1042–43)). Moreover, once it is determined whether Defendants violated the TCPA, calculating individual damages will be a simple matter of tallying the number of unsolicited advertisements class members received by fax and computing statutory damages under 47 U.S.C. § 227(b)(3). *See, e.g., Birchmeier*, 302 F.R.D. at 255. Additionally, determining whether treble damages are available based on a finding that Defendants willfully or knowingly violated the TCPA, § 227(b)(C), is likely, in this case, to be resolved at the class level. For these reasons, the Court finds that Plaintiffs have satisfied the Rule 23(b)(3) requirement of predominance.

## F. Rule 23(b)(3): Superiority

Rule 23(b)(3) permits class certification only in cases where "a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). The Seventh Circuit has recognized that, like commonality, Rule 23(b)(3)'s superiority requirement is closely related to the requirement of predominance—the more that common questions predominate over other issues in the case, the more likely it is that a class action is the superior method of adjudication. *See Messner*, 669 F.3d at 814 n.5.

Plaintiff argues that resolution of the TCPA issues on a classwide basis, rather than in thousands of individual lawsuits, would be an efficient use of both judicial and party resources. Pl.'s Mot. at 15 (quoting *Hinman v. M & M Retail Ctr.*, 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008)). In response, Defendants rely on their argument, which the Court has already rejected within the context of its predominance analysis, that there must be an individual lawsuit for each putative class member. Defs.' Resp. at 12.

Because common questions predominate for the reasons explained above, class certification is the most efficient method of adjudicating the class members' TCPCA claims. *See Messner*, 669 F.3d at 814 n.5; *see also Zeidel,* 2017 WL 1178150 at *5 (finding superiority requirement satisfied in TCPA case); *Birchmeier*, 302 F.R.D. at 255–56 (same). The Court therefore finds that Plaintiffs have satisfied the superiority requirement under Rule 23(b)(3).

## IV. Conclusion

For the reasons stated herein, Plaintiff's Rule 23 motion for class certification [92] is granted. Plaintiff may proceed with its TCPA claims on behalf of the following class:

All persons who were sent one or more facsimiles from Med-Care Diabetic & Medical Supplies of Boca Raton, FL on any of the following 6 dates: July 2, 2013, July 10, 2013, October 2, 2013, October 9, 2013, October 17, 2013, or October 25, 2013, stating, "Your patient has asked us to contact you regarding authorization for a Nebulizer and its medications to help with their breathing problems. . . . In order to supply those products to your patient, under the Medicare program, we must obtain a signed order by the patient's physician.

**IT IS SO ORDERED.**          **ENTERED**   **9/29/17**

_____
**John Z. Lee**
**United States District Judge**